IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

THE PIKE COMPANY

        Plaintiff,

v.

TRI-KRETE, LTD.

        Defendant.

Civil Action No.
6-18-cv-06311

MEMORANDUM OF LAW

---

Defendant, Tri-Krete, Ltd. ("Tri-Krete") moves for an order permanently staying the further prosecution of this action and compelling arbitration between the parties pursuant to New York General Business Law, §756-b, New York's Prompt Payment Act. Moreover, Tri-Krete respectfully requests this Court order arbitration of all case issues pursuant to this Court's stated preference for alternate dispute resolution as opposed to binding arbitration of issues solely under the PPA.

## MEMORANDUM

### FACTS:

This case involves the construction of student housing at Marist College located in Poughkeepsie, New York ("project"). Plaintiff Pike was the general contractor on the project. Defendant Tri-Krete was one of Pike's project subcontractors. Plaintiff and Defendant entered into a Master Subcontract Agreement and a work order dated June 14, 2016. Tri-Krete was to manufacture and install architectural precast concrete panels for phase 2 of the project known as Phase 2 Marist College North Campus Housing. The total amount of the contract before any change orders or contract revisions was $7,027,005.00. (Exhibit A).

1

The subcontract, which is attached as Exhibit A contains the following dispute resolution provisions, which provide in relevant part:

> If a dispute arises out or relates to this Master Subcontract or its breach that is not resolved through direct discussion then the parties shall participate in mediation under the Construction Industry Rules of the American Arbitration Association. (Exhibit A, Subcontract section 11.1).

> Any controversy or claim not resolved through mediation shall be settled according to the dispute resolution procedure of the prime contract. Subcontract (Exhibit A section 11.2).

> The Prime Contract states that any disputes not resolved through mediation must be litigated in a court of competent jurisdiction. (Prime Contract Exhibit E section 13.2).

The subcontract is governed by New York State General Business Law Article 35E, better known as New York States Prompt Payment Act ("PPA"). The PPA applies to private non-residential construction contracts with a value greater than $150,000.00. The PPA serves to expedite payment of money to contractors.

The PPA provides rules for the processing and timing of payments to contractors on private construction projects, as well as mandatory arbitration of such disputes. G.B.L. § 756-b(c); *with* G.B.L. § 757(3). The law provides that the party to whom an invoice is submitted has 12 days to approve or disapprove all or a portion of the invoice in a written statement describing the items not approved. G.B.L. § 756-a (2)(a)(i) & (ii). Where a contractor does not make a timely payment, the aggrieved subcontractor may resort to expedited binding arbitration under the American Arbitration Association ("AAA") to resolve the payment dispute. G.B.L. §756-b (3)(c).

To initiate arbitration, the aggrieved subcontractor must send a notice of complaint informing the general contractor of the violations under General Business Law

2

§756-a and that the subcontractor will refer the matter to expedited arbitration if not resolved within 15 days. G.B.L. §756-b (3)(c).

The parties may not contract to opt out of the PPA arbitration requirement.

General Business Law § 757(3) states:

> The following provisions of construction contracts shall be void and unenforceable: . . . .

> (3) A provision, covenant, clause or understanding in, collateral to or affecting a construction contract stating that expedited arbitration as expressly provided for and in the manner established by section seven hundred fifty-six-b of this article is unavailable to one or both parties.

(G.B.L. §757(3)).

Tri-Krete finished all work under the contract plus extra work performed at the request of Pike. Tri-Krete submitted payment applications, invoices and contract revisions to Pike. Pike unreasonably withheld approval for more than twelve days after submittal of the following invoices and payment applications:

> Payment application 12 for the period ending June 30, 2017;

> Payment application 13 for the period ending July 31, 2017;

> Invoice No. 8880 for building C dated August 23, 2017;

> Invoice No. 8893 for building C dated September 25, 2017;

> Invoice No. 8894 for building D dated September 25, 2017;

> Invoice No. 8915 for building C dated October 25, 2017;

> Invoice No. 8916 for building D dated October 25, 2017;

> Contract revisions (change orders) 1-20 as identified on the attached ledger (Exhibit B).

Pike has failed to pay Tri-Krete on the numerous invoices and owes Tri-Krete $4,172,859.27.

3

The parties were unable to resolve this matter with direct discussion. Therefore, pursuant to the Alternate Dispute Resolution Clause of the contract, the parties participated in mediation governed by the American Arbitration Construction Industry Rules. The parties were unable to reach a resolution during mediation.

Therefore, on April 20, 2018, Tri-Krete sent a letter via email to Pike's attorney informing Pike of it's various violations under General Business Law § 756-a and putting Pike on notice that if the matter was not resolved in 15 days Tri-Krete would refer the matter to the American Arbitration Association ("AAA") for expedited arbitration pursuant to AAA rules. The letter was sent to Pike's attorney with a request that he accept service of the demand on behalf of Pike. Pike's counsel failed to respond to the request to accept service. Instead, on May 4, 2018, he objected to the demand as defective for failure to serve the notice directly on Pike. Subsequently, Tri-Krete sent another notice letter directly to The Pike Company on May 8, 2018, with a copy to Pike's counsel. (Exhibit C).

The matter has not been resolved, so on June 11, 2018 Tri-Krete filed a demand for expedited arbitration with the American Arbitration Association pursuant to General Business Law §756-b (3)(c). (Exhibit D). On June 4, 2018, Tri-Krete was served with a summons and complaint by Pike in this action, which alleges breach of contract by Tri-Krete. That action was filed on April 20, 2018. Pike brought the action in this Court under diversity jurisdiction.

## **ARGUMENT**

This Court must apply New York's substantive law and compel Pike to arbitrate pursuant to General Business Law §756-b (3)(c). The subcontract contains a choice of law clause that states:

> "All matters relating to the validity, performance, interpretation or construction of this Master Subcontract Agreement or the breach of this Master Subcontract Agreement shall be governed by the law in effect at the location of the Project."

(Exhibit A, §13.3)

As this case was brought via diversity jurisdiction, this court must apply the substantive law of the state in which it sits. Erie RR. v. Tompkins, 304 U.S. 64 (1938). As the project was located in Poughkeepsie, New York, both Federal Law and the contract's choice of law provision requires this Court to apply the substantive law of New York to this matter. This contract is governed by New York State's Prompt Payment Act (PPA), General Business Law Article 35E.

The PPA applies to any private non-residential construction contract with a value greater than $150,000.00. G.B.L. §756. The subcontract between the parties is for the construction of student housing at Marist College. Student housing is not residential construction as defined by the PPA. G.B.L. §756(1). Under the PPA, residential is defined as a one, two or three family residential dwelling or a residential tract development of one hundred or less one or two family dwellings, or any residential construction project where the aggregate size of such project is four thousand five hundred square feet or less, or any residential project of fewer than seventy-five units which receives financial assistance from the federal government, the state or a municipal entity designed for households earning an average of one hundred twenty-five percent of the housing and urban development agency area median income. G.B.L §756 (1). Student housing at a private institution does not fall into any of the above residential definitions, therefore, the subcontract is for non-residential construction as required to be governed by the PPA.

Marist College is a private, coeducational liberal arts college, thus the contract is a private construction contract, (i.e. it is not a contract for public work or entered into with a public

entity).  The contract meets the requirement to be private construction.  Lastly, the contract's value when entered into was $7,027,005.00.  The contract exceeds the monetary requirement of the statute.  As the subcontract between the parties is for private non-residential construction with a value greater than $150,000.00, this contract is governed by New York's Prompt Payment Act, General Business Law Article 35E.  This Court must apply the Prompt Payment Act to the matter at hand.

New York's Prompt Payment Act requires compulsory arbitration and the parties cannot contract out of arbitration. G.B. L. §756-b (3)(c) and G.B.L. §757 (3).  If a contractor is accused of violating any of the provisions of the prompt payment act the aggrieved subcontractor may refer the matter to the American Arbitration Association for expedited arbitration.  G.B.L. §756-b (3)(c).  General Business Law §757(3) unambiguously voids and renders unenforceable any contractual provision that makes expedited arbitration unavailable to one or both parties.

In re Arbitration between Capital Siding & Const., LLC, 138 A.D.3d 1265, 1266 (3rd Dept. 2016), when the general contractor withheld payments from the subcontractor, the subcontractor filed for expedited arbitration under General Business Law §756-b (3)(c).  The general contractor brought a petition under CPLR §7503 to permanently stay arbitration on the grounds the subcontract expressly states litigation is the parties chosen method of dispute resolution.  The Court found that the function of the subcontract's dispute resolution method requiring litigation is to establish litigation as the sole legal option for resolution of disputes, which in turn denies both parties the opportunity to arbitrate.  The court ruled the contract's resolution clause was void and unenforceable under General Business Law §757(3).

Like in Capital Siding, the obvious function of section 11.2 of the subcontract and section 13.2 of the prime contract is to frustrate a subcontractor's rights under the New Yok State PPA, and permit the general contractor to unilaterally establish litigation as the sole legal option for the resolution of disputes under the subcontract between Pike and Tri-Krete. These sections remove from the subcontractor the right to arbitration under the PPA guaranteed by the law. General Business Law §757(3)) voids and renders unenforceable these types of subcontract dispute provisions, therefore this action must be stayed and Pike compelled to arbitrate.

Furthermore, arbitration is favored in both New York State and Federally as a means of resolving disputes. Matter of Smith Barney Shearson v. Sacharow, 91 N.Y.2d, 39 (1997); Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006). This Court has the inherent power to stay proceedings to allow for an alternate disposition of the action, particularly where judicial economy dictates. See, e.g., Premier Intern. Associates LLC v. Hewlett-Packard Co., 554 F.Supp.2d. 717, 720 (E.D. Texas), *citing* Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

This preference for alternate dispute resolution is supported by this Court's Alternate Dispute Resolution Program, which transfers all new civil cases filed into the Alternate Dispute Resolution Program. This case is in the Alternate Dispute Resolution Program. (See Exhibit F, Civil Docket showing automatic referral to the Alternate Dispute Resolution Program on April 23, 2018). As this Court has set this case into the Court's Alternate Dispute Resolution Program and arbitration has already been started under New York State General Business Law §756-b (3)(c), this Court should for judicial economy permanently stay this proceeding and compel Pike

to arbitrate this matter as required under General Business Law § 757-b (3)(c). Tri-Krete respectfully requests Pike be compelled to arbitrate this entire matter.

## CONCLUSION

For all the forgoing reasons, this Court should grant defendants' motion to stay this proceeding, compel Pike to arbitrate this matter as required under General Business Law § 756-b (3)(c) and order arbitration of all case issues pursuant to this Court's stated preference for alternate dispute resolution as opposed to binding arbitration of issues solely under the PPA.

Respectfully Submitted

June 25, 2018

Edward J. Sheats, Esq.
Sheets & Bailey, PLLC
620 Vine St.
P. O. Box 586
Liverpool, NY 13088
Telephone: (315) 676-7314
Email: esheats@theconstructionlaw.com